UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:15-cv-00289-RJC

| | |
|---|---|
| CASSANDRA MARIE PONDER,         ) | |
| )| |
| **Plaintiff,**         ) | |
| )| |
| v.         ) | |
| )| **ORDER** |
| NANCY A. BERRYHILL,         ) | |
| **Acting Commissioner of**         ) | |
| **Social Security Administration,**         ) | |
| )| |
| **Defendant.**         ) | |
| ———————————————— ) | |

**THIS MATTER** comes before the Court on Plaintiff's Motion for Summary Judgment, (Doc. No. 12), and Memorandum in Support, (Doc. No. 12-1)[1]; Defendant's Motion for Summary Judgment, (Doc. No. 14), and Memorandum in Support, (Doc. No. 15); and Plaintiff's Response to Defendant's Motion for Summary Judgment, (Doc. No. 16).

**I.     BACKGROUND**

A.     Procedural Background

Plaintiff Cassandra Ponder ("Plaintiff") seeks judicial review of Defendant Social Security Commissioner's ("Defendant" or "Commissioner") denial of her social security claim. (Doc. No. 1). On October 3, 2011, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II

---

[1]     Plaintiff originally filed a Motion for Summary Judgment and Supporting Memorandum on May 25, 2016, (Doc. Nos. 10 and 10-1), in conjunction with a Motion for Leave to File Excess Pages because Plaintiff's Memorandum was over the 25-page limit imposed by the Local Rules, (Doc. No. 11). Plaintiff's Motion for Leave to File Excess Pages was denied on May 25, 2016 and she was granted until August 5, 2016 to re-file her Motion for Summary Judgment with a compliant memorandum. Plaintiff's June 6, 2016 Motion for Summary Judgment and Memorandum in Support renders Plaintiff's previous Motion for Summary Judgment moot.

and Title XVI of the Social Security Act, 42 U.S.C. § 405 et seq. (Doc. Nos. 8 to 8-26: Administrative Record ("Tr.") at 201–17). Plaintiff alleged an inability to work due to disabling conditions beginning on April 1, 2010. (Id. at 201). The Commissioner denied Plaintiff's applications initially and on reconsideration. (Id. at 93, 110, 127, and 142). Plaintiff filed a timely written request for a hearing. (Id. at 50).

On May 21, 2013, Plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Id. at 53–92). The ALJ issued a decision on July 19, 2013, denying Plaintiff's claims. (Id. at 12–35). Plaintiff filed a request for review of the ALJ's decision on September 16, 2013, which was the Appeals Council denied on November 22, 2013. (Id. at 1–9). Plaintiff filed a complaint in federal court seeking judicial review and a remand of her claim on January 23, 2014 and was remanded to the Commissioner on August 8, 2014 on the basis of a consent motion to remand filed by Defendant. Ponder v. Colvin, 1:14-cv-00019-MOC (W.D.N.C. filed Jan. 23, 2014).

On June 16, 2015, Plaintiff, represented by counsel, again appeared and testified at a hearing before an ALJ—the same ALJ who presided over the first hearing. (Id. at 1308–38). The ALJ issued a decision on August 26, 2015, denying Plaintiff's claims, which is the final decision of the Commissioner. (Id. at 1279–307).

Plaintiff's Complaint seeking judicial review and a remand of her case was filed in this Court on December 23, 2015. (Doc. No. 1). Plaintiff's Motion for Summary Judgment, (Doc. No. 12), and Plaintiff's Memorandum in Support, (Doc. No. 12-1), were filed June 6, 2016; and Defendant's Motion for Summary Judgment, (Doc. No. 14), and Defendant's Memorandum in Support, (Doc. No. 15), were filed September 6, 2016. Plaintiff filed a response to Defendant's Motion for Summary Judgment on September 23, 2016, but rested on the arguments she made in

her Memorandum in Support of her Motion for Summary Judgment. (Doc. No. 16). The pending motions are ripe for adjudication.

B. Factual Background

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between April 1, 2010, and the date of his decision on August, 26, 2015.[2] (Tr. at 1307). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). The ALJ concluded that Plaintiff was not under a disability at any time from April 1, 2010, through the date of his decision, August 26, 2015. (Tr. at 1307).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

(1) whether claimant is engaged in substantial gainful activity—if yes, not disabled;

(2) whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509—if no, not disabled;

(3) whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1 and meets the duration requirement—if yes, disabled;

(4) whether claimant has the residual functional capacity ("RFC") to perform his or her

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

past relevant work—if yes, not disabled; and

(5) whether considering claimant's RFC, age, education, and work experience he or she can make an adjustment to other work—if yes, not disabled.

See 20 C.F.R. § 404.1520(a)(4)(i–v). In this case, the ALJ determined at the fifth step that Plaintiff was not disabled. (Tr. at 1306–07).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since April 1, 2010, the alleged disability onset date. (Id. at 1284–85). At the second step, the ALJ found that Plaintiff had the following severe impairments: "fibromyalgia, migraine headaches, irritable bowel syndrome, a history of abdominal endometriosis, depression, [and] anxiety." (Id. at 1285). At the third step, the ALJ determined that Plaintiff did not have an "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1." (Id. at 1285–86).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform "medium" work.[3] (Id. at 1290). Specifically, the ALJ found that Plaintiff retained the RFC to perform as follows:

> medium work as defined in 20 CFR 404.1567(c) and 416.967(c). I specifically find the claimant can lift or carry 50 pounds occasionally and 25 pounds frequently and [s]he can sit, stand or walk for 6 hours, each, of an 8-hour workday. I also find that she can frequently climb ladders, ropes and scaffolds. I further find the claimant needs to avoid concentrated exposure to noise and hazards. The claimant can perform simple 1-2 step tasks; she should have no public contact; and, she can have frequent contact with co-workers and supervisors.

(Id.). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

---

[3] Medium work involves "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. 404.1567(c).

medical evidence and other evidence." (Id.). The ALJ further opined that he "considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and 416.927 and SSRs [Social Security Rulings] 96-2p, 96-5p, 96-6p and 06-3p." (Id.).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work. (Id. at 1305). At the fifth and final step, the ALJ concluded, based on the testimony of a vocational expert and "considering [Plaintiff's] age, education, work experience, and residual functional capacity, [that] there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (Id. at 1306). Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, from April 1, 2010 through the date of his decision. (Id. at 1307).

## II.  STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, the Fourth Circuit noted that "substantial evidence" has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion." 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401); see also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence . . . .").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays, 907 F.2d at 1456; see also Smith v. Schweiker, 795 F.2d at 345; Blalock, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome—so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. DISCUSSION

On appeal to this Court, Plaintiff's discombobulated brief assigns nine errors to the ALJ's decision, presents those errors as six issues, and then makes three arguments overarching arguments incorporating those issues. (Doc. No. 12-1 at 2–3, 7–25).[4] Plaintiff's arguments are best understood as assigning error to the ALJ's RFC determination and the ALJ's credibility determinations regarding medical opinions. Plaintiff loosely contests the ALJ's determination of Plaintiff's credibility, which the Court will also address briefly.[5]

---

[4] Plaintiff also submits nine exhibits with her Motion for Summary Judgment and Supporting Memorandum. (Doc. Nos. 10-2 to 10-10). The exhibits range from Mayo Clinic publications regarding different medical impairments and copies of documents already in the record. The Court agrees with Defendant that the record only consists of the documents submitted and certified by the Commissioner and has reviewed this case with that in mind. See 42 U.S.C. § 405(g).

[5] Plaintiff also argues that the ALJ "incorrectly found that there were jobs in significant numbers in the national economy that the Plaintiff could perform and that the Plaintiff was not

A. <u>Whether the ALJ's RFC Determination Was Supported by Substantial Evidence</u>

Plaintiff's muddled RFC argument is essentially this: the ALJ did not comply with the Fourth Circuit's decision in <u>Mascio v. Colvin</u> and complete a function-by-function analysis consistent with Plaintiff's moderate difficulties in social functioning and with concentration, persistence, and pace limitations. 780 F.3d 632 (4th Cir. 2015); (Doc. No. 12-1 at 8–24). Within this argument, Plaintiff asserts that the ALJ's simple 1–2 step tasks limitation does not adequately accommodate Plaintiff's moderate difficulties with concentration, persistence, and pace, (Doc. No. 12-1 at 9–10); the lack of a low-stress, nonproduction environment limitation is inconsistent with certain evidence, (<u>Id.</u> at 10–13); and the ALJ's RFC is generally not supported by substantial evidence, (<u>Id.</u> at 13).

The responsibility for assessing a claimant's RFC falls exclusively on the ALJ. 20 C.F.R. §§ 404.1546(c), 416.946(c). The RFC determination requires the ALJ to determine an individual's ability to do sustained work-related activities and in so doing to identify an individual's functional limitations. SSR 96-8p, 1996 WL 374184, at *1. As with the ALJ's other determinations, the RFC must be supported by substantial evidence. In <u>Mascio</u>, the ALJ found that the claimant had moderate difficulties in maintaining concentration, persistence, or pace, but the ALJ's RFC finding, and consequently the hypothetical presented to the VE, limited the claimant to merely "light work." 780 F.3d at 637–38. In reviewing that case, the Fourth Circuit held that an ALJ must adequately account for a claimant's limitations through a function-by-function analysis. <u>Id.</u> Importantly though, the Fourth Circuit declined to adopt a per se rule

---

disabled." (Doc. No. 12-1 at 24). These arguments are simply derivatives of Plaintiff's RFC argument and solely rely on the RFC determination being incorrect. (I.e., if the ALJ erred in his RFC determination, then the Step 5 determination was also flawed.) Accordingly, the Court does not address these arguments separately.

requiring remand whenever an ALJ does not perform an explicit function-by-function analysis because "remand would prove futile in cases where the ALJ does not discuss functions that are 'irrelevant or uncontested.'" Id. at 636 (quoting Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)(per curiam)). Therefore, remand may be appropriate "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. (quoting Cichocki, 729 F.3d at 177).

Here, not only did the ALJ incorporate functional limitations into Plaintiff's RFC, but he cited and relied on substantial evidence in doing so. (Tr. at 1288). The ALJ found that Plaintiff has moderate difficulties in social functioning and with regard to concentration, persistence, or pace. (Id.). The ALJ accommodated these difficulties by limiting Plaintiff's RFC to, among other things, "simple 1–2 step tasks" and "no public contact [and] . . . frequent contact with co-workers and supervisors." (Id. at 1290). Plaintiff does not so much contest these limitations as limitations that weren't imposed—namely, a staying-on-task limitation under Mascio and a low-stress, nonproduction limitation based upon certain evidence. Neither of these arguments is meritorious.

Plaintiff asserts that Mascio requires remand in this case because the ALJ found moderate difficulties in concentration, persistence, and pace, but only limited Plaintiff to simple 1–2 step tasks and did not discuss Plaintiff's ability to stay on task for a full workday. But, Mascio held that an ALJ is not required to impose an additional limitation if the ALJ explains that "the concentration, persistence, or pace limitation [did] not affect [Plaintiff's] ability to work." 780 F.3d at 638. Furthermore, "Mascio only requires a remand when an ALJ's opinion is 'sorely lacking' in a manner that 'frustrates meaningful review.'" White v. Colvin, No. 3:15-CV-00197-

FDW, 2016 WL 3381265, at *5 (W.D.N.C. June 14, 2016) (quoting Mascio, 780 F.3d at 636–37). Although the ALJ did not explicitly use the words "stay on task," his analysis and citations to the record clearly demonstrate that the ALJ's RFC is supported by substantial evidence, including the ability to stay on task for a full workday. Among other things, the ALJ concluded that Plaintiff's activities of daily living supported the ALJ's RFC determination because Plaintiff testified to doing dishes, laundry, folding clothes, sweeping, mopping, taking out the trash, dusting, cleaning the bathroom, going to the grocery story, going to drive-thrus for food, and taking care of her son, including going to the park and his doctor appointments. (Tr. at 1297). Furthermore, Plaintiff cites no evidence nor does she even make a suggestion that she cannot stay on task throughout the workday and that a more restrictive RFC would be warranted.

Plaintiff also argues a low-stress, nonproduction limitation was warranted, but the ALJ expressly found the opposite, concluding that based on the mental longitudinal history, "no restriction with respect to low stress nonproduction work is supported by the evidence." (Id. at 1305). In specific support for his finding, the ALJ noted:

> The claimant was reported to be alert and oriented times four, she denied memory loss or confusion, she denied hallucinations, paranoia, panic attacks or suicidal thoughts; judgment and insight were appropriate; she was oriented times three; friendly, fully communicative, with an entirely normal mood, exhibited on occasion no signs of depression or mood elevation, had appropriate affect with full range and congruent mood; she was reported to be friendly, fully communicative, relaxed, could multiply, subtract and perform serial sevens. (Exhibits 39F2, 38F15, 18F, 15F, 11F and 7F).

(Id.). The ALJ further cited medical records noting Plaintiff's GAF and positive response to treatment. (Id.). Where the ALJ relied primarily on objective medical evidence and treatment notes, Plaintiff, on the other hand, relies now on primarily opinion evidence to suggest she should a low-stress, nonproduction limitation was required. Not only is the ALJ not required to give credit to opinion evidence, particularly opinions regarding RFC determinations reserved for

the Commissioner, but the ALJ's determination is clearly supported by substantial evidence. Finally, the Court notes that some of the RFC limitations appear to limit Plaintiff's exposure to stress, including avoiding concentrated exposure to noise and hazards and a strict limitation of no contact with the public.

The Court finds that the ALJ analyzed the record as a whole, including various medical opinions and documents, as well as Plaintiff's testimony about her symptoms, and sufficiently articulated the function-by-function analysis regarding Plaintiff's mental limitations. Consequently, the Court finds that the ALJ complied with the function-by-function assessment requirements of SSR 96–8p and Mascio and that the ALJ's decision is supported by substantial evidence.

### B. Whether the ALJ Properly Assigned Credibility to Medical Opinions

Although Plaintiff couches her argument regarding the credibility of her two treating physicians, Dr. Jorge Flechas and Dr. Ricardo Bierrenbach, as part of the RFC analysis, the Court will address it separately. The Fourth Circuit has held that the treating physician rule does not require that a treating physician's opinion automatically be afforded controlling weight. Hunter, 993 F.2d at 35. "[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (upholding ALJ's rejection of treating physician's opinion because the record contained contradictory evidence)).

Pursuant to SSR 96–2p an ALJ must "give good reasons in the notice of the determination or decision for the weight given to a treating source's medical opinion." S.S.R. 96–2p, 1996 WL 374188, at *5 (July 2, 1996). Specifically, the "notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. The Fourth Circuit has set forth the following factors to consider when determining the weight of a physician's medical opinion if not according it controlling weight:

(1) whether the physician has examined the applicant,
(2) the treatment relationship between the physician and the applicant,
(3) the supportability of the physician's opinion,
(4) the consistency of the opinion with the record, and
(5) whether the physician is a specialist.

Johnson v. Barnhart, 434 F.3d 650, 655 (4th Cir. 2005); 20 C.F.R. § 404.1527(c). Although an ALJ must consider all of these factors, the ALJ does not need to explicitly provide a factor-by-factor analysis or discuss every factor in the decision. Henley v. Astrue, No. 3:11-CV-488, 2012 WL 2804846, at *3–4 (W.D.N.C. July 10, 2012); Warren v. Astrue, No. 5:08-CV-149, 2009 WL 1392898, at *3 (E.D.N.C. May 18, 2009).

The ALJ's medical opinion credibility analysis in this case is lengthy, thorough, and detailed. (Tr. at 1298–1305). In many cases, the ALJ broke Plaintiff's treating physician's statements down by specific opinion and addressed the credibility of each of those opinions and giving opinions varying weights ranging from limited to great. For example, the ALJ assigned great weight to Dr. Flechas' diagnosis of fibromyalgia, but limited weight to his opinion that Plaintiff was disabled since that is a determination reserved to the Commissioner. (Id. at 1301).

As Plaintiff points out, she had long standing relationships with these physicians each of whom had examined Plaintiff on numerous occasions.[6] But this only addresses two for the Fourth Circuit's factors, and indeed, the ALJ pointed out numerous instances in which the medical evidence did not support or was inconsistent with Drs. Flechas and Bierrenbach's opinions. For example, the ALJ noted that while Dr. Flechas opines that Plaintiff's migraines can "take her down for hours at a time," Dr. Flechas treatment notes from a year prior state that medication kept Plaintiff's headaches "under control." (Id.). The ALJ also discounted Dr. Flechas' opinions for his apparent reliance on Plaintiff's subjective statements. (Id. at 1299). Regarding Dr. Bierrenbach, the ALJ cited myriad medical evidence contradicting Dr. Bierrenbach's opinions, including Plaintiff's GAF scores and medical treatment notes. (Id. at 1302).

Ironically, the ALJ seems to have come under attack for such a detailed explanation as Plaintiff has focused on numerous small factual contentions, missing the forest for the trees. Indeed, it seems in many circumstances Plaintiff is asking the Court to reweigh the facts, which is not the Court's role. A full review of the ALJ's credibility determinations makes clear that the ALJ's decision is supported by substantial evidence. The Court will not waste its time rehashing what is already a thorough and well-explained credibility analysis. Suffice it to say, the Court finds where the ALJ discredited the opinions of Drs. Flechas and Bierrenbach, it provided good reasons for doing so. At worst this an issue where reasonable minds could disagree; regardless, it is a decision that is supported by substantial evidence.

---

[6] Although, the ALJ did note that Plaintiff stopped seeing Dr. Bierrenbach for a period and saw him infrequently, describing the history as "sporadic." (Tr. at 1302).

C. Whether the ALJ Properly Addressed Plaintiff's Credibility

Plaintiff briefly contests the ALJ's determination of Plaintiff's credibility. (Doc. No. 12-1 at 7, 24–25). Notably, Plaintiff's six-sentence argument lacks a single citation to the record or any case law. The Court is not inclined, nor required, to address any issue the Plaintiff essentially gives no attention, but the Court will nonetheless note that the ALJ's discussion of Plaintiff's credibility was thorough and detailed. (Tr. at 1291–93). The ALJ discusses numerous specific statements Plaintiff made and then cites evidence in the record that discredits those specific statements. (Id. at 1292). From what can be gathered by Plaintiff's cursory argument, it appears her main objection was that the ALJ noted Plaintiff helped take care of her mother through the day when in fact the opposite may have been true. (Id. at 1293) ("Treatment records indicate the claimant was able and [sic] take care of her son despite having take [sic] care of her mother through the day and then coming home to take care of her son (Exhibit 53F)."). Assuming arguendo that Plaintiff's argument is factually correct, it comes nowhere close to undermining the substantial evidence relied on by the ALJ in concluded Plaintiff's testimony was not credible. The ALJ spent a full-page citing myriad evidence of Plaintiff's diagnostic tests, physical examination, and activities of daily living and a potential factual inaccuracy in one sentence, which was not discussed further, does not lead this Court to believe that the ALJ's credibility determination was not supported by substantial evidence.[7]

---

[7] Plaintiff repeatedly raises this potential inconsistency regarding whether Plaintiff was helping to take care of her mother or vice versa. Plaintiff argues that this inconsistency undermines much of the ALJ's opinion from the RFC determination to questions of Plaintiff's and a physician's credibility. The ALJ's decision in each regard is supported by substantial evidence regardless of this fact.

## IV. CONCLUSION

After careful review of the ALJ's decision, the transcript of the proceedings, the record, and the Parties' motions and briefs and all the arguments therein, the Court finds that the ALJ's decision was supported by substantial evidence and the ALJ applied the appropriate legal standards.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Motion for Summary Judgment, (Doc. No. 12), is **DENIED**;

2. Defendant's Motion for Summary Judgment, (Doc. No. 14), is **GRANTED**;

3. Plaintiff's Initial Motion for Summary Judgment, (Doc. No. 10), which exceeded the 25-page limit, is **DISMISSED as moot**; and

4. The Clerk of Court is directed to close this case.

Signed: March 31, 2017

Robert J. Conrad, Jr.
United States District Judge